CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
JUL 21 2021
JULIA C. DUDLEY, CLERK
BY: s/ H. MCDONALD
       DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 4:03-cr-70134 |
| v. | MEMORANDUM OPINION & ORDER |
| MONCILLO MURPHY, | JUDGE NORMAN K. MOON |
| *Defendant.* | |

  Defendant Moncillo Murphy seeks compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(a) or, in the alternative, a sentence reduction to time served under § 404 of the First Step Act. Dkts. 571; 586. Murphy cites his nonviolent disciplinary record, low recidivism rating, and family involvement as factors justifying such a reduction, and he argues that he would receive a lower sentence today under intervening Fourth Circuit caselaw. Dkt. 571 at 1.

  The Government opposes Murphy's motions. Dkts. 576; 595. Regarding compassionate release, it concedes that Murphy has exhausted administrative remedies. Dkt. 576 at 6–8. Because Murphy has received both doses of Pfizer's COVID-19 vaccine, greatly reducing the risk that the virus poses to his health, the Government argues that Murphy has not met his burden to show extraordinary and compelling circumstances justifying release. Dkts. 595; 597. The Government concedes that Murphy is eligible for consideration for sentence reduction under the First Step Act, but it opposes any reduction, arguing that Murphy's original sentence remains appropriate in light of the § 3553(a) factors. Dkt. 576 at 19–22.

  The Court finds that Murphy is eligible for consideration for sentence reduction under the First Step Act and, after considering the relevant § 3553(a) factors, will reduce his sentence from

1

420 months to 360 months but not grant his request for immediate release. Accordingly, the Court will grant in part and deny in part Murphy's motions.

## BACKGROUND

On May 17, 2004, Murphy pleaded guilty to:

- **Count 1**: Conspiracy to distribute a mixture or substance containing more than 50 grams of cocaine base in violation of 21 U.S.C. § 846;

- **Count 33**: Possession of a firearm during or in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c); and

- **Count 34**: Possession of a firearm which was shipped or transported in interstate or foreign commerce while a convicted felon in violation of 18 U.S.C. § 922(g);

Dkts. 120; 121.

On August 27, 2004, this Court sentenced Murphy to 360 months on Count 1 and 180 months on Count 34, to be served concurrently. Dkt. 261. The Court also sentenced him to the statutory mandatory minimum of 60 months on Count 33, to be served consecutively, for a total of 420 months' imprisonment. *Id.* The Bureau of Prisons ("BOP") estimates that he will be released on August 25, 2033.[1] Dkt. 571-1.

## COMPASSIONATE RELEASE

Generally, "[t]he court may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). However, a statutory exception allows the court, on a defendant's motion, to reduce the term of imprisonment for "extraordinary and compelling reasons," after the defendant has asked BOP for relief and fully exhausted administrative appeals following denial of the

---

[1] See Inmate Locator, FED. BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited July 15, 2021).

request. 18 U.S.C. § 3582(c)(1)(A). A defendant seeking relief under § 3582(c)(1)(A) has the burden of establishing that compassionate release is warranted. See United States v. Hamilton, 715 F.3d 328, 337 (11th Cir. 2013); United States v. McMillan, No. 7:08-cr-31, 2020 WL 3213399, at *2 (W.D. Va. June 15, 2020). If a defendant has exhausted his remedies and shows that extraordinary and compelling reasons support a sentence reduction, the Court must consider the applicable sentencing factors under 18 U.S.C. § 3553(a) to determine whether a reduction is appropriate. 18 U.S.C. § 3582(c)(1)(A).

### 1. Exhaustion of Administrative Remedies

The parties do not dispute, and the Court finds, that Murphy exhausted his administrative remedies as § 3582(c)(1)(A) requires. On July 12 and August 27, 2020, Murphy submitted requests to his warden for compassionate release. Dkt. 571-5 at 2, 4. Both were denied. Id. at 1, 6.

### 2. Extraordinary and Compelling Reasons

The Fourth Circuit has held that "district courts are empowered to consider *any* extraordinary and compelling reason for release that a defendant might raise." United States v. McCoy, 981 F.3d 271, 284 (4th Cir. 2020) (internal quotation marks and citation omitted). "In the context of the COVID-19 outbreak, courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." United States v. Blevins, 832 F. App'x 192, 192 (4th Cir. 2020) (per curiam).

Murphy argues that the risks posed to him by COVID-19, because of his comorbidities, constitute extraordinary and compelling circumstances. Dkt. 571 at 5–8. Murphy, who is 71 years old, suffers from glaucoma, hypertension, cervical disc disorder, and chronic kidney disease. Dkt. 575 at 4. According to the Centers for Disease Control and Prevention ("CDC"), "[h]aving

3

chronic kidney disease" and "heart conditions such as . . . possibly high blood pressure (hypertension) can make you more likely to get severely ill from COVID-19."[2]

However, Murphy has received both doses of Pfizer's COVID-19 vaccine, which drastically decreases the risks that COVID-19 poses to him. Dkt. 597 at 1. Studies show that Pfizer's vaccine is 95% effective at preventing COVID-19.[3]

Because Murphy is now fully vaccinated, the Court finds that any increased risks posed by COVID-19 due to his underlying medical conditions do not constitute extraordinary and compelling circumstances. See United States v. Mendoza, No. 06-cr-167, 2021 WL 1312920, at *8 (W.D. Pa. Apr. 8, 2021) ("While there are certainly still unknowns about the vaccine administered to Mendoza, it appears that Mendoza's risks of (1) being reinfected by COVID-19, and (2) suffering severe illness if he is reinfected, are speculative because of his vaccination and his initial bout with COVID-19 in May 2020.").

Because Murphy has not met his burden to show that extraordinary and compelling circumstances warrant a sentence reduction, the Court will deny his motion for compassionate release.

## FIRST STEP ACT

Again, generally, "'[t]he court may not modify a term of imprisonment once it has been imposed.'" United States v. Wirsing, 943 F.3d 175, 183 (4th Cir. 2019) (quoting 18 U.S.C. § 3582(c)). But Section 404(b) of the First Step Act "'*expressly* permits the court to' modify a term

---

[2] People with Certain Medical Conditions, CTRS. FOR DISEASE CONTROL & PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited July 9, 2021) (emphasis removed).

[3] Pfizer-BioNTech COVID-19 Vaccine Overview and Safety, CTRS. FOR DISEASE CONTROL & PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/Pfizer-BioNTech.html (last visited July 9, 2021).

of imprisonment," id. at 184 (quoting § 3582(c)) (emphasis in original), and "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) were in effect at the time the covered offense was committed." Pub. L. No. 115-391, § 404, 132 Stat. 5194, 5222 (2019).

1. Eligibility

A defendant is "eligible" to move for relief under the First Step Act if he committed a "covered offense." United States v. Gravatt, 953 F.3d 258, 262 (4th Cir. 2020). The First Step Act defines a "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by [S]ection 2 or 3 of the Fair Sentencing Act of 2010, that was committed before August 3, 2010." Id. § 404(a), 132 Stat. at 5222. But "[n]o court shall entertain a motion" under § 404 of the First Step Act if: (1) "the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010," or (2) "a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits." Pub. L. No. 115-391, § 404(c), 132 Stat. at 5222.

The parties do not contest that Murphy is eligible for consideration for a sentence reduction under the First Step Act. Dkt. 571 at 8–9; Dkt. 576 at 19. When he was sentenced under 21 U.S.C. §§ 846, 841(b)(1)(A), and 851 in 2004, Murphy faced a statutory sentencing range of 20 years to life imprisonment. Dkt. 570 ¶¶ 7, 93; see Dkt. 111 (information to establish prior conviction). Today, after the First Step Act, Murphy would face a sentencing range of 15 years to life imprisonment.[4] Because the Fair Sentencing Act modified the statutory penalties for Murphy's

---

[4] The First Step Act changed the conditions under which enhanced mandatory minimum penalties for prior convictions apply. See Pub. L. No. 115-391, § 401(a)(1)(57), 132 Stat. at 5220

cocaine base conspiracy offense, which was committed before August 3, 2010, and because no statutory exception applies to bar the Court's review of Murphy's motion on the merits, the Court finds that Murphy is eligible for consideration of his request for a sentence reduction. Dkt. 261.

## 2. Consideration of Request

Section 404(c) states that "[n]othing in this section shall be construed to require a court to reduce any sentence pursuant to this section." Pub. L. No. 115-391, § 404, 132 Stat. 5194, 5222 (2019). A district court's decision whether to afford relief to an eligible defendant under the First Step Act is discretionary. Gravatt, 953 F.3d at 261, 264; Wirsing, 943 F.3d at 186. Thus, even where a defendant is *eligible* to seek relief to modify his sentence under the First Step Act, the question remains whether the defendant has shown that a reduced sentence is *warranted*. See Gravatt, 953 F.3d at 262 (even if a defendant is "eligible" to move for relief, that "does not mean the defendant is entitled to relief under the Act," rather, "[i]t only means that his motion is entitled to be considered on the merits").

To determine the sentence that the court would have imposed under the Fair Sentencing Act, the court must engage in an analysis that involves (1) the recalculation of the guidelines range "in light of 'intervening case law,'" and (2) a reconsideration of the 18 U.S.C. § 3553(a) factors, taking into account a defendant's post-sentencing conduct. United States v. Lancaster, 997 F.3d 171, 175, 177 (4th Cir. 2021) (quoting United States v. Chambers, 956 F.3d 667, 672 (4th Cir.

---

(2019). Now, a defendant's prior conviction must be either a "serious drug felony" or "serious violent felony" to trigger a sentencing enhancement under 21 U.S.C. § 851. 21 U.S.C. § 841(b)(1)(A). Murphy does not contest that his prior conviction is a serious drug felony. Indeed, the Court finds that Murphy's prior 1991 Virginia state conviction for cocaine distribution established by information, Dkt. 111, is a serious drug felony because (1) he served a term of imprisonment of more than 12 months on that conviction, see Dkt. 111 at 6 (imposing sentence of ten years with three years to serve); Dkt. 570 ¶ 77; and (2) he was released within 15 years of the federal offense of conviction, see id. See 21 U.S.C. 802(57); 18 U.S.C. 924(e)(2). Accordingly, Murphy is subject to an enhanced mandatory minimum sentence of 15 years.

2020)); see also United States v. Collington, 995 F.3d 347, 355 (4th Cir. 2021) ("[D]istrict courts must *correct* original Guidelines errors and apply intervening case law made retroactive to the original sentence.") (emphasis in original); Chambers, 956 F.3d at 674. However, "the analysis is not intended to constitute a plenary resentencing." Lancaster, 997 F.3d at 175.

Murphy argues that he would no longer be sentenced as a career offender in light of intervening Fourth Circuit caselaw. In United States v. Norman, the Fourth Circuit held that conspiracy to possess with intent to distribute a controlled substance in violation of 21 U.S.C. § 846 is not categorically a "controlled substance offense" under U.S.S.G. § 4B1.2(b). 935 F.3d 232, 237–39 (4th Cir. 2019). Although the Fourth Circuit's holding in Norman has not been made retroactive, the Fourth Circuit recently held that district courts must apply Norman's holding when recalculating the guidelines range upon reconsideration of a defendant's sentence pursuant to the First Step Act. See Lancaster, 997 F.3d at 176 (requiring district court to apply non-retroactive intervening caselaw in Norman that "indicate[s] that [the defendant] cannot now be sentenced as a career offender"). In its briefing, filed before the Fourth Circuit issued its opinion in Lancaster, the Government contends that Murphy "is a career offender under U.S.S.G. §4B1.1" as well as an armed career criminal, and that his guideline range has not changed. Dkt. 576 at 20.

The career offender guideline enhancement applies only when a defendant's "instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a)(2). Murphy pleaded guilty to and was convicted of conspiracy to possess with intent to distribute more than 50 grams of cocaine base, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A). Dkt. 261 at 1. Because this offense no longer qualifies as a "controlled substance offense," and neither of Murphy's other offenses of conviction constitute

either a "crime of violence" or a "controlled substance offense" as defined in § 4B1.2, the Court finds that Murphy would not be sentenced as a career offender today after Norman.

### a. Recalculation of the Guidelines Range

#### i. Offense Level

Murphy and the Government agree, and the Court finds, that Murphy's offense level of 38 remains the same today even though he is no longer a career offender. Dkt. 571 at 11–12; Dkt. 576 at 20. The presentence investigation report holds him accountable for at least 163 kilograms of crack, corresponding to a base offense level of 38. Dkt. 570 ¶ 58. Because Murphy was a leader in the conspiracy, his offense level increases to 41 under U.S.S.G. § 3B1.1(b). Id. ¶ 61. Murphy also receives a three-point deduction for acceptance of responsibility, bringing his total offense level back to 38. Dkt. 570 ¶¶ 61, 64, 65.

#### ii. Criminal History Category

Murphy argues that his criminal history category would be IV today. Dkt. 571 at 11–12. The Court agrees. Murphy's criminal history category was calculated to be VI at the time of sentencing based on the now-outmoded career offender categorization and on his status as an armed career criminal. Dkt. 570 ¶ 83, 84. Murphy concedes that he would still be classified as an armed career criminal. Dkt. 571 at 11. When calculating a defendant's criminal history category, armed career criminals receive the highest of (1) their criminal history category under Chapter Four of the guidelines; (2) the career offender criminal history category, if applicable; (3) Category VI, if the defendant used or possessed a firearm or ammunition in connection with either a crime of violence or a controlled substance offense; or (4) Category IV. U.S.S.G. § 4B1.4(c).

Because Murphy's drug conspiracy conviction is no longer considered a controlled substance offense under the guidelines after Norman, the career offender criminal history category

under (2) no longer applies. For the same reason, Murphy does not qualify for Category VI under (3), even though he was convicted of possessing a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c). Thus, Murphy receives the highest of either (1) his criminal history category under Chapter Four of the guidelines or (4) Category IV. According to the presentence investigation report, Murphy's prior convictions establish a criminal history category of IV. Dkt. 570 ¶ 82. Therefore, under either (1) or (4), Murphy receives a criminal history category of IV.[5]

                *iii.*   *Revised Guideline Range*

With a total offense level of 38 and a criminal history category of IV, Murphy's guideline range for the conspiracy count is 324 to 405 months. Together with the mandatory 60-month consecutive sentence on Murphy's § 924(c) count, the Court finds that Murphy's guideline range is 384 to 465 months.

Murphy's original sentence of 420 months falls within this range; however, the low end of the revised range is 36 months less than his original sentence. Dkt. 178 at 1.

            **b.**   **Consideration of § 3553(a) Factors**

                *i.*   *Nature, Circumstances, and Seriousness of Offense and*
                     *History and Characteristics of Defendant*

Murphy argues that he has demonstrated "remarkable rehabilitation" while incarcerated. Dkt. 571 at 13. His BOP disciplinary record contains only one, nonviolent infraction from 2007, nearly 14 years ago. Id.; see also Dkt. 571-3. He has also spent a great deal of time attempting,

---

[5] The United States argues that Murphy's guideline range remains unchanged. Dkt. 576 at 20. However, at the time of filing, the Government did not have the benefit of the Fourth Circuit's decision in Lancaster, requiring the recalculation of the guidelines range "in light of intervening case law," and specifically in light of Norman. 997 F.3d 171, 175, 177 (internal quotations omitted).

though without success, to obtain his GED, and maintained ties with his family. Dkt. 571 at 13; see also Dkts. 571-2; 571-4.

Murphy proposes, upon release, to live in Axton, Virginia, with his sister Ella Wilson. Dkt. 571 at 14. Since she is aging and has mobility issues, Wilson represents that Murphy's presence would provide her with needed assistance. Dkt. 571-6.

Murphy's offense conduct was serious. He was an "organizer or manager" in a "prolific" crack cocaine distribution conspiracy responsible for the distribution of at least 163 kilograms of crack cocaine. Dkt. 570 ¶¶ 18–19, 53. During the drug conspiracy, Murphy hired distributors to work 12-hour shifts, and he openly carried and traded firearms. Id. ¶¶ 19, 53. Once, Murphy held a woman against her will in his trailer after "brandish[ing] a firearm" at her husband and ordering the husband to leave, and then took bids from his associates to "determine who would be the first to have sex with [the woman]." Id. ¶ 50.

Murphy also has a long and violent criminal history. In 1970, when he was 20 years old, Murphy tricked a 13-year-old boy into following him to a wooded area, where he "clamped his hand over the victim's nose and mouth, while screaming 'I'm going to kill you,' until the victim passed out." Id. ¶ 74. Murphy continued to assault the boy, who drifted in and out of consciousness. Murphy "stomp[ed] the victim's head with the heel of his shoe" and "hit [the victim] in the back of his head with a rock" before "t[ying] the victim to a tree with some rope and set[ting] him on fire." Id. "The victim was initially hospitalized for 65 days and required numerous follow-up treatments including plastic surgery." Id. Murphy served roughly 16 years in prison and was released on March 7, 1986. Id. On March 11, 1986, just days after his release, he was arrested for (and ultimately convicted of) assault and battery. Id. ¶ 75. Between 1991 and 2000, Murphy also served more than 8 years in prison on multiple counts of cocaine distribution. Id. ¶ 77.

    *ii.*    *Avoiding Unwarranted Sentencing Disparities Between Similarly Situated Defendants*

As addressed above, Murphy's guideline range is lower today than it was in 2004. Murphy also argues that today he would be likely to receive a sentence below even that updated range, since only 34% of drug trafficking offenders received sentences within the relevant Guideline range in fiscal year 2019.[6] Dkt. 571 at 12. Murphy points out that over the same period, "the mean decrease in months from the guideline range was 40 months." Id.[7]

Of Murphy's co-conspirators,[8] only his nephew Rodney Wilson is similarly situated: Murphy and Wilson played similar leadership roles in the offense conduct, as they "jointly operated" the drug conspiracy in which the other co-defendants were distributors. Dkt. 446 ¶¶ 16, 53.

Unlike Murphy, who pleaded guilty, Wilson chose to stand trial. A jury found Wilson guilty of four counts of conspiracy to distribute or possess with intent to distribute more than 50 grams of cocaine base in violation of 21 U.S.C. § 846; four counts of distribution of more than five grams of cocaine base in violation of 21 U.S.C. § 841(a)(1); and one count of possessing a firearm while a convicted felon in violation of 18 U.S.C. § 922(g). Dkts. 240; 276. This Court sentenced Wilson to life imprisonment on all eight drug-related offenses and 120 months on the § 922(g) offense, to run concurrently. Dkt. 276.

---

[6] See United States Sentencing Commission Quarterly Data Report: Fiscal Year 2019, at 17, https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencingstatistics/quarterly-sentencing-updates/USSC-2019_Quarterly_Report_Final.pdf (last visited July 15, 2021).

[7] Id. at 26–27.

[8] The other co-conspirators pled guilty solely to conspiracy alone or lesser included offenses, and received sentences ranging from probation to 100 months' incarceration. Dkt. 446 ¶¶ 7–9, 11, 12, 14, 15, 17; Dkt. 313 at 1.

On July 29, 2020, this Court reduced Wilson's term of incarceration to 360 months pursuant to § 404 of the First Step Act. Dkt. 565. At the time of Wilson's prior sentencing, the Court found that he had a total offense level of 44 and a criminal history category of III; however, the Court "did not make a determination as to the drug weight attributable to [Wilson]." Id. at 5. The jury found Wilson responsible for 1.5 kilograms of cocaine base, while the PSR held him responsible for 47 kilograms. Id. At the time, the Guideline range for the two weights was the same: life imprisonment; but "today the two drug quantities carry starkly different guideline ranges for Defendant's drug distribution offenses—that is, [l]ife versus 295–365 months." Id. This change in Wilson's guideline range was one factor that the Court considered in granting Wilson's First Step motion. In contrast, although Murphy's guideline range has also changed following the First Step Act, as discussed above, Murphy was responsible for 163 kilograms of cocaine base, more than three times the maximum amount attributable to Wilson. Dkt. 570 at 58.

As noted above, Wilson's criminal history category is III, while Murphy's is IV. Indeed, Wilson has a far less extensive criminal history, with no convictions for violent crime. Dkt. 548 at ¶¶ 68–69. Murphy's long and violent criminal history, including kidnapping, assault with a deadly weapon, and assault and battery, was detailed in the discussion of offender characteristics and history above.

Still, both Murphy and Wilson—at least at the time the Court considered his First Step Act motion—had committed few and nonviolent disciplinary infractions during their time in BOP custody, and had not been disciplined for any infractions at all for over a decade. Dkt. 571-3; Dkt. 565 at 7.

Now age 71, Murphy is 22 years older than Wilson. Dkt. 570 at 3; Dkt. 246 at 2. The BOP projects Wilson's release in April 2030, when he will be 58.[9] Murphy's estimated date of release is August 25, 2033, at which time he will be 83.[10]

The Court will take into account the need to avoid unwarranted sentencing disparities between similarly situated defendants, including Wilson and others sentenced today for similar drug conspiracies, in determining an appropriate sentence reduction in Murphy's case.

   iii. *Just Punishment, Respect for the Law, and Adequate Deterrence*

Murphy argues that his more than 17 years served, plus 10 years supervised release, are "sufficient to ensure respect for the law, deterrence of future crime, and just punishment." Dkt. 571 at 15. Moreover, at age 71, with ongoing health issues, Murphy maintains that he will not pose a threat to the community. Id. at 14. The BOP assesses his risk of recidivism as low. Id. at 15; Dkt. 571-2 at 1. The Government, however, argues that Murphy has served only about half his sentence and thus that the purposes of sentencing have not yet been met.[11] Dkt. 576 at 8. In addition, the Government contends that Murphy still presents a danger to society and that his continued incarceration provides deterrence to himself and the community at large. Id. at 8–9, 20–22.

---

[9] See Inmate Locator, FED. BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited July 15, 2021).

[10] Id.

[11] The Government includes in its discussion of Murphy's criminal background the proposition that he will be eligible for "Elderly Offender" release on February 1, 2027. Dkt. 576 at 3. Such release is the prerogative of the Bureau of Prisons, and Murph's eligibility is not certain given his prior criminal history. See Home Confinement under the First Step Act, U.S. DEP'T OF JUST., FED. BUREAU OF PRISONS, https://www.bop.gov/policy/om/001-2019.pdf ("Eligible elderly offender means an offender in the custody of the Bureau […] (3) who has not been convicted in the past of any Federal or State crime of violence") (emphasis removed) (last visited July 14, 2021).

### c. Sentence Reduction

Considering Murphy's recalculated guideline range in light of intervening case law, and after weighing the § 3553(a) factors, the Court concludes that modifying Murphy's sentence pursuant to the First Step Act is appropriate and warranted. The Court finds significant Murphy's minor and nonviolent BOP infraction record (including his clear conduct over the past 14 years), his attempts to take advantage of available programming, his family support, and his age and declining health. However, the need to afford adequate deterrence to criminal conduct and the need to promote respect for the law do not support Murphy's immediate release. In modifying Murphy's sentence, the Court also considers the similarities and differences between Murphy and his co-defendant Wilson, as well as others sentenced for similar conduct today. The Court finds that a total of 360 months, consisting of 300 months on the drug conspiracy count and 60 consecutive months on the § 924(c) count, is sufficient—but not greater than necessary—to accomplish the goals of sentencing.

### CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion to reduce sentence pursuant to the First Step Act of 2018 and for compassionate release under 18 U.S.C. § 3582(c)(1)(A), Dkts. 571; 586.

Specifically, the Court **MODIFIES** Defendant's sentence as follows: Defendant's sentence of incarceration is **REDUCED** to 360 months, consisting of 300 months on Count 1 and 60 months on Count 33, to run consecutively. All other terms of Defendant's sentence remain the same.

The Court **DENIES** Defendant's request for immediate release from custody.

It is so **ORDERED**.

The Clerk of Court is directed to send this Order to Defendant and all counsel of record.

Entered this  21st  day of July, 2021.

                                            NORMAN K. MOON
                                            SENIOR UNITED STATES DISTRICT JUDGE